IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| KYRIAKI DEMETRIOU KAMPERI,<br><br>4 Priamou Street,<br>2334 Nicosia, Cyprus,<br><br>*Plaintiff*,<br><br>v.<br><br>MARCO RUBIO, in his official capacity as the Secretary of State,<br><br>2201 C Street, N.W.<br>Washington, D.C. 20520<br><br>U.S. DEPARTMENT OF STATE,<br><br>2201 C Street, N.W.<br>Washington, D.C. 20520<br><br>SCOTT BESSENT, in his official capacity as Secretary of the Treasury,<br><br>1500 Pennsylvania Avenue, N.W.<br>Washington, D.C. 20220<br><br>U.S. DEPARTMENT OF THE TREASURY<br><br>1500 Pennsylvania Avenue, N.W.<br>Washington, D.C. 20220<br><br>OFFICE OF FOREIGN ASSET CONTROL,<br><br>1500 Pennsylvania Avenue, N.W.<br>Washington, D.C. 20220,<br><br>*Defendants*. | Civil Action No. _____<br><br>**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** |

Plaintiff Kyriaki Demetriou Kamperi ("Ms. Kamperi" or "Plaintiff"), through undersigned counsel, respectfully seek declaratory and injunctive relief against Defendants Marco Rubio, in his

official capacity as the United States Secretary of State; the United States Department of State; Scott Bessent, in his official capacity as the United States Secretary of the Treasury ("Treasury"); the U.S. Department of the Treasury, and its Office of Foreign Assets Control ("OFAC") (collectively, "Defendants") and allege as follows:

## INTRODUCTION

1. Plaintiff, Ms. Kamperi, is a Cypriot national, a wife and mother of two sons, living in Cyprus. She has been battling cancer for eight years. Her cancer has metastasized to her liver and bones and is now at Stage IV, so she is preparing for her own death and seeks the comfort of knowing that her family will be provided for when she is gone. That comfort, however, is out of reach for her because Defendants have imposed economic sanctions against her, blocking all her interests in property, and those sanctions will remain in place even after she is dead. Because Ms. Kamperi has resigned from all of her positions, is too sick to work (and has been for years before sanctions were imposed), and is simply trying to live out the rest of her days in peace with her family, there is patently no risk that she will violate U.S. sanctions and no need for those sanctions to stay in place. Despite knowing all this, however, Defendants have failed to decide Ms. Kamperi's delisting petition for the last *twenty-six months* and they do not appear on track to decide her petition before her death.

2. Defendants sanctioned Ms. Kamperi on April 12, 2023, for her work as a lawyer in Cyprus that was entirely lawful under Cypriot and European law at the time. To be sure, Ms. Kamperi questions the appropriateness of Defendants' imposition of sanctions on her in the first place, but she focuses this Complaint on Defendants' refusal to grant her delisting petition, which has been pending for more than two years, since May 26, 2023. Time is not a luxury that she has, and the merits of her delisting petition are unassailable.

3. "Both OFAC and the State Department maintain that '[t]he ultimate goal of sanctions is not to punish, but to bring about a positive change in behavior.' That goal, both agencies acknowledge, is often furthered by delisting persons when they have rectified their ways." *Goetz v. Palluconi*, 775 F. Supp. 3d 189, 203 (D.D.C. 2025) (Boasberg, C.J.) (citations omitted); *see* OFAC, *Filing a Petition for Removal from an OFAC List*, https://perma.cc/4MVD-6YVH; U.S. State Dep't, *Learn More About the Department of State's Delisting Process* ("*State Delisting Guidance*"), https://perma.cc/G7AL-TC2B. As the State Department, which imposed the sanctions here has emphasized: "The power and integrity of U.S. sanctions programs derive not only from the U.S. government's ability to designate and add persons to sanctions lists but also from its willingness to remove persons from such lists consistent with the law." *State Delisting Guidance*; *see also* U.S. Dep't of State, Economic Sanctions Policy and Implementation https://www.state.gov/economic-sanctions-policy-and-implementation/ ("We also work to remove economic sanctions when appropriate to reward and incentivize improved behavior. . . .").

4. There can be no question that Ms. Kamperi poses no risk of violating U.S. sanctions in the future. Although Defendants imposed sanctions on April 12, 2023, based on Ms. Kamperi's legal work, she was largely absent from work or on much reduced hours since her May 2017 cancer diagnosis and due to surgery, other treatments, and her recovery process. Ms. Kamperi resigned altogether from the law firm where she worked in April 2022, a year before sanctions were imposed. Thus, the conduct that Defendants found sanctionable had stopped even before sanctions were imposed. Given the severity of Ms. Kamperi's illness and her impeding death, she cannot now work, and nobody could reasonably believe that she poses any risk of violating U.S. sanctions in the future. Nevertheless, Defendants have arbitrarily and capriciously failed to grant her delisting petition.

**JURISDICTION AND VENUE**

5. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1361; and 5 U.S.C. §§ 701–06.

6. Sovereign immunity is waived by 5 U.S.C. § 702.

7. Mandamus relief is authorized by 28 U.S.C. § 1361.

8. Declaratory and injunctive relief is authorized by 28 U.S.C. §§ 2201 and 2202, respectively, Federal Rules of Civil Procedure 57 and 65, and the inherent equitable powers of a United States District Court.

9. Venue is proper in this District under 28 U.S.C. § 1391(e)(1).

**THE PARTIES**

10. Plaintiff Ms. Kamperi is a retired Cypriot lawyer who currently resides at 4 Priamou Street, 2334 Nicosia, Cyprus with her husband and daughter. She is severely ill with Stage IV cancer, which threatens her survival.

11. Defendant Marco Rubio is the Secretary of State. He is sued in his official capacity.

12. Defendant U.S. Department of State is a Department of the Executive Branch of the United States Government and an agency within the meaning of the APA. 5 U.S.C. § 551(1). The State Department is accordingly subject to the APA.

13. Defendant Scott Bessent is the Secretary of the Treasury. He is sued in his official capacity.

14. Defendant U.S. Department of the Treasury is a Department of the Executive Branch of the United States Government and an agency within the meaning of the APA. 5 U.S.C. § 551(1). The Treasury Department is accordingly subject to the APA.

15. Defendant OFAC is housed within the Department of the Treasury. OFAC administers and enforces several sanctions programs targeting certain jurisdictions, sectors, organizations, individuals, and entities.

## FACTUAL ALLEGATIONS

16. On April 12, 2023, OFAC designated Cypriot lawyer Christodoulos Georgiou Vassiliades and his law firm, Christodoulos G. Vassiliades & CO. LLC ("CGV"), and related entities, claiming that he "is a prolific enabler of Russian oligarchs." State Dep't, *Further Curbing Russia's Efforts to Evade Sanctions and Perpetuate its War against Ukraine* (Apr. 12, 2023), https://pl.usembassy.gov/factsheet_sanctions/. Ms. Kamperi was designated because the State Department concluded that she was "a key associate of Vassiliades who is listed as a director or minority shareholder of multiple of Vassiliades' entities." *Id.* She also was designated "for being or having been a leader, official, senior executive officer, or member of the board of directors of the Government of the Russian Federation," and "for being or having been a leader, official, senior executive officer, or member of the board of directors of Sberbank Investment Limited," another sanctioned entity. *Id.*

17. The basis for Ms. Kamperi's designation was flimsy at best. She was never in any sense "a leader, official, senior executive officer, or member of the board of directors of the Government of the Russian Federation." She is not even a Russian national. Defendants have never provided a basis for this claim or identified in what capacity it claimed that she served in such a role. Defendants have made no further mention of this basis for designation since it was made, so it is unclear whether Defendants still believe that its rather absurd claim is true.

18. It is true that Ms. Kamperi was a lawyer at CGV who provided lawful advice to Russian clients who were not subject to sanctions at the time, but Ms. Kamperi had resigned from

CGV and its related entities on April 15, 2022, a year before she was sanctioned. She was never a shareholder of the Vassiliades law firm or its related entities. Even before her resignation, since her May 2017 cancer diagnosis, Plaintiff was largely absent from work or working reduced hours so that she could undergo surgery and other treatments. Although she had orally resigned in April 2022, upon her designation, Ms. Kamperi formally resigned in writing from the Vassiliades law firm and its related entities on April 12, 2023.

19. Ms. Kamperi also was not a leader, senior executive of the board of directors of Sberbank Investment Limited, a Cypriot company. As to Ms. Kamperi's work, (1) the services provided to Russian nationals and companies were legal at the time, (2) the persons receiving such services were not sanctioned as Specifically Designated Nationals ("SDNs"), and (3) there was no reason to know that they would become designated. In 2011, as part of CGV corporate services, Ms. Kamperi started to provide legal and corporate services to Sberbank Investment Limited, a Cyprus company, beneficially owned by Sberbank Russia. The primary objective of Sberbank Investment Limited was to hold shares in other Cypriot companies as part of security/collateral used for various loans provided by Sberbank to other entities. In 2016, Sberbank established another company—Sberbank Finance Limited—with a similar ownership structure and activities. As a nominee director, she was never in control of those companies. As per the standard professional practice in Cyprus, nominee directors represent the interests of the beneficial owner in the context of the company's operations and are not involved in the actual management of the company or its business strategy and decisions. She received her salary from CGV, and she never received additional remuneration or any benefits for these nominee positions.

20. At the start of the Russian invasion of Ukraine, Ms. Kamperi sought to resign from her position, as agreed with Mr. Vassiliades. However, the Cyprus Registrar of Companies does

not accept—and has not processed—notifications of resignations of Cypriot professionals like Ms. Kamperi for sanctioned entities without a license from the Cypriot Unit for the Implementation of Sanctions ("MEK"). To the best of Ms. Kamperi's knowledge, the activities of these entities have been suspended since their designation. Further, the companies applied for a license from MEK to redomicile to the Russian Federation. Ms. Kamperi submitted resignation letters to both companies on April 12, 2023, noting for each that she had "not been performing any of the duties of director of the Company ever since April 2022," when she resigned from CGV. To make the resignations official, she sought MEK's permission to resign as a nominee director for those companies on May 25, 2023. MEK approved her resignations on November 21, 2024.

21. Ms. Kamperi was diagnosed with breast cancer in May 2017, which was followed by surgery and other treatments. The cancer had metastasized to her liver by May 2023. Recent MRI results show it is an aggressive form of triple-negative breast cancer, which her oncologist describes as "terminal." She is now undergoing regular intravenous chemotherapy, and suffering from its effects.

22. On May 26, 2023, Ms. Kamperi filed a petition for her delisting with Defendants to lift the sanctions imposed a month earlier. Four months later, on September 26, 2023, Defendants sent their first questionnaire requesting additional information. Ms. Kamperi responded on November 16, 2023. Defendants submitted a second questionnaire on August 30, 2024, and Ms. Kamperi responded on December 18, 2024. Ms. Kamperi submitted an updated medical report to Defendants on March 11, 2025. Since filing the delisting petition, Ms. Kamperi's counsel regularly follow up with Defendants to check the status of the petition. Most recently, on July 18, 2024, the State Department responded, as it consistently has over the past *26 months*, that

it is "working diligently to reach a decision" but is "not able to provide a time estimate for the completion of our review."

23. Banks in Cyprus have frozen Ms. Kamperi's bank accounts and companies will not transact business with her for fear that any business dealings with her will lead the United States to impose secondary sanctions on them. The sanctions imposed by Defendants have crippled Ms. Kamperi's ability to meet the financial needs for her family and will prevent her family from inheriting her assets upon her death. The stress caused by Defendants' actions exacerbate her illness and interfere with her efforts to obtain much needed peace of mind before her death.

## COUNT I

### DEFENDANTS VIOLATED THE APA BY FAILING TO DELIST MS. KAMPERI

24. Plaintiffs re-allege and incorporate by reference each and every allegation set forth in all preceding paragraphs.

25. Ms. Kamperi filed her petition for delisting on May 26, 2023, which clearly established that she poses no risk of violating U.S. sanctions. Sanctions were imposed based on her work for CGV, which is now defunct, and she resigned from CGV a year before she was sanctioned. Similarly, her limited role as a nominee director of Sberbank Investment Limited was never sufficient to warrant sanctions, and she had resigned from that position as well. She never had any position in the Government of the Russian Federation. Given that she is too sick to work and battling end-stage cancer, no one could reasonably believe that Ms. Kamperi is a sanctions risk.

26. Ms. Kamperi has cooperated with Defendants and provided answers to their questions, and Defendants have had no further questions for her since she provided answers to

their second questionnaire on December 18, 2024, more than seven months ago. In the meantime, Ms. Kamperi has continued to update Defendants on her terminal cancer diagnosis.

27. Nevertheless, Defendants have arbitrarily and capriciously failed to act on Plaintiffs' delisting petition, including evidence of a change in circumstances. Twenty-six months have passed since Ms. Kamperi filed her petition, and yet Defendants still tell her they cannot commit to when they will decide her petition. But her petition does not raise any difficult issues, given that she has resigned from Sberbank and CGV, CGV is defunct, and she has been and remains too sick to work. It is arbitrary and capricious for Defendants to tell a woman on her deathbed that a two-plus year wait is not long enough, and she must wait longer (and who knows how long) for them to make a decision. Such a decision may not come until after her death, which is too late to provide her with any comfort.

28. Section 501.807(a) permits a person to "seek administrative reconsideration of his, her or its designation or that of a vessel as blocked" and to "submit arguments or evidence that the person believes establishes that insufficient basis exists for the designation." Similarly, Section 501.807(a) allows a person to establish "that the circumstances resulting in the sanction no longer apply." OFAC has a duty to review the request for delisting and issue a decision. 31 C.F.R. § 501.807(b) (3); *see also State Delisting Guidance* (following the OFAC delisting process).

29. The APA "imposes a general but nondiscretionary duty upon an administrative agency to pass upon a matter presented to it 'within a reasonable time,' 5 U.S.C. § 555(b), and authorizes a reviewing court to 'compel agency action unlawfully withheld or unreasonably delayed,' *id.* § 706(1)." *Mashpee Wampanoag Tribal Council, Inc. v. Norton,* 336 F.3d 1094, 1099–1100 (D.C. Cir. 2003). Defendants have refused to respond to Ms. Kamperi's requests for delisting within a reasonable time and have offered no explanation for this delay. Thus,

Defendants are plainly violating the APA. *See Muwekma Tribe v. Babbitt*, 133 F. Supp. 2d 30, 37 (D.D.C. 2000) ("[T]he defendants' refusal to provide the plaintiff with a definite time frame for review of its petition does not enable the court to evaluate any prospect of completion. Indeed, the record does not reflect that the defendants have any notion as to when they will complete the review process. This ambiguity defeats any assertion that the process proceeds with reasonable dispatch. The court concludes that the ambiguous, indefinite time frame for review of the plaintiff's petition constitutes unreasonable delay within the meaning of APA § 706[1].").

30. More than 20 years ago, the Judicial Review Commission for Foreign Asset Control Report found that OFAC had a flawed de-listing process that took too long and needed to be remediated. U.S. Judicial Review Comm'n on Foreign Asset Control, Final Report (2001). Decades later, it has gotten worse rather than better. One of the recommendations from the Report was that "specific deadlines and standards governing review of license applications, for example, as is provided under the Export Administration Act, will ensure that those whose assets are blocked obtain expeditious consideration, thereby minimizing the possibility that parties will suffer irreparable harm while awaiting a ruling from OFAC." *Id.* at 88. The same Report also addressed reports from witnesses who expressed frustration regarding the time it takes to obtain a decision from OFAC. The Report concluded that the delay often renders licensing requests moot and the entire licensing procedure, therefore, ineffective. *Id.* at 123. Additionally, back in 2001, the average licensing time was three to six months. It is now considerably longer, taking up to several years. Here, twenty-six months have passed already, and Defendants cannot even predict when a decision will be reached.

31. OFAC traditionally handles delisting petitions, and experience has shown that process often takes years. *See Zevallos v. Obama*, 793 F.3d 106, 111 (D.C. Cir. 2015) (explaining

a delisting was sought in 2004, but not denied until 2013); *Al Haramain Islamic Found., Inc. v. Dep't of Treasury*, 686 F.3d 965, 974 (9th Cir. 2012) (noting a three-year delay between a reconsideration request and a denial); Erich C. Ferrari, *Shooting In The Dark, Blindfolded, With No Bullets: The OFAC SDN Dedesignation Process*, Aspatore, 2016 WL 3924415, at *17 (2016) ("[T]he length of time OFAC takes to carry out this process has been criticized by both counsel and courts alike. Indeed, in a recent case handled by the author, OFAC took nearly five years to return a decision—a duration made all the more troubling when one considers that for the last three years of that period OFAC continuously told the designated party that their matter was in the final stages of review.").

32. The intended reality is that sanctions are strangling Ms. Kampari financially, which is the very goal of sanctions. This is a situation where "effective relief here cannot be afforded by awaiting a final determination." *Cockrum v. Califano*, 475 F. Supp. 1222, 1229 (D.D.C. 1979). Where an agency has refused to act upon a request, the Supreme Court has recognized that the aggrieved party is "free to seek a writ of mandamus to 'compel agency action unlawfully withheld or unreasonably delayed.'" *Arizona v. Intertribal Council of Arizona, Inc.*, 570 U.S. 1, 19 n.10 (2003) (quoting 5 U.S.C. § 706(1)). Defendants are required to decide and issue a written opinion in response to Ms. Kamperi's delisting requests; therefore, the Court should order Defendants to issue an expeditious decision. *See Norton v. S. Utah Wilderness Alliance*, 542 U.S. 55, 64 (2002).

33. Additionally, it would be arbitrary and capricious for Defendants to do anything other than delist Ms. Kamperi. The APA requires a reviewing court to set aside agency action that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law." 5 U.S.C. § 706(2)(A).

34. Any denial of Ms. Kamperi's petition would fail that standard. Under the arbitrary and capricious standard, "the agency must examine the relevant data and articulate a satisfactory explanation for its action including a rational connection betweenthe facts found and the choice made." *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut.Auto. Ins. Co.*, 463 U.S. 29, 43 (1983). An agency action is arbitrary and capricious "if the agency . . . entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Id.* It plainly is implausible to view Ms. Kamperi leaving her deathbed and returning to work and to commit a sanctions violation before she dies. Consistent with Defendants' own stated aims of their sanctions program, Ms. Kamperi should be rewarded for putting an end to the conduct that Defendants found objectionable. Defendants have no reason to inflict further harm on a dying woman. They should let her die in peace, with dignity.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray as follows:

a. That this Court issue a writ of mandamus compelling Defendants to decide Ms. Kamperi's delisting petition and delist her from the SDN list; and,

b. That this Court grant Plaintiffs such other and further relief as the Court may determine to be just and proper under the circumstances.

August 6, 2025

Respectfully submitted,

/s/ Christopher D. Man
Christopher D. Man (Bar No. 453553)

Cari N. Stinebower (Bar No. 457147)
WINSTON & STRAWN LLP
1901 L Street, N.W.
Washington, D.C. 20036
(202) 282-5000 (phone)
(202) 282-5100 (fax)
CMan@winston.com
CStinebower@winston.com

*Counsel for Kyriaki Demetriou Kamperi*